GAUDIN, Judge.
Appellant George Hasapis was seriously injured when a motorcycle he was driving collided with an automobile driven by Dennis Centanni on Veterans Boulevard in Kenner, Louisiana. Hasapis filed suit against Centanni and State Farm Automobile Insurance Company, Centanni’s insurer, and the case went to trial before a jury in the 24th Judicial District Court.
After submission of plaintiff’s evidence, the defendants asked for a directed verdict[1] dismissing the demands, which was denied. Centanni and State Farm then presented their evidence and again moved for a directed verdict, which was granted.
On appeal, Hasapis contends that the trial court erred in granting the directed verdict and not allowing the jury to make its decision. We find, however, after a consideration of the testimony and in accord with Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), that the evidence in defendants’ favor was overwhelming and that an adjudication against Hasapis’ interests was and is correct. The appealed-from judgment is therefore affirmed.
In Gonzales, a court of appeal found fault with a jury instruction and remanded the case to the district court for a new trial. The Supreme Court of Louisiana reversed, saying that because the Louisiana Constitution vests fact-finding authority and jurisdiction in the appellate courts, judicial economy was best served by a prompt decision by the court of appeal on the record rather than a remand.
Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980), cited Gonzales favorably and stated:
“Where a finding of fact is interdicted because of some legal error implicit in *21 the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record.”
In Fritscher v. Chateau Golf & Country Club, 453 So.2d 964 (La.App. 5th Cir.1984), this Court mentioned the Gonzales opinion and quoted directly from Ragas:
“This is not to say, and Gonzales should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.”
Here, the record is complete and it clearly shows that Hasapis had not proven his allegations by a preponderance of the evidence. His motorcycle and Centanni’s Toyota automobile were approaching each other on a two-lane stretch of Veterans Boulevard right before they collided, Hasapis going in an easterly direction and Centanni headed west. The accident occurred on January 9, 1981 at approximately 9 p.m. while Hasapis was driving from the site of one party to another.
Moments before impact, Hasapis testified that a car he was following slowed to make a right turn off Veterans Boulevard and onto Tupelo Street. Hasapis veered his motorcycle, he said, slightly to his left to go past the turning automobile but he added that he remained in his lane of traffic.
Hasapis’ passenger, Albert Sweeney, also said that the motorcycle stayed in the east-bound lane, as did several of Hasapis’ friends, Steve and Esther Geraci, who were in a pickup truck following the motorcycle. Geraci, once convicted of selling a pound of marijuana to an undercover police agent, said that everyone at the first party had been drinking beer and that “... maybe a few weeds were going around.”
Centanni testified that Hasapis was three to four feet inside his (Centanni’s) lane right before the collision. Centanni said he turned to his right but that he couldn’t avoid the motorcycle. Centanni’s wife Nancy was in the car with her husband, and she gave testimony similar to his. She added that sometime in December, 1981, Hasapis came to her house and apologized for having caused the accident and offered to pay the $100.00 deduction the Centannis had paid to have their auto repaired.
The investigating police officer stated that gouge and scuff marks were entirely in Centanni’s lane, a physical observation corroborated by Larry Hooper, Centanni’s brother-in-law, who was at the scene shortly after the accident. Hasapis was ticketed for improper passing, failure to use his headlight and for having an expired driver’s license, and he subsequently pled guilty to these charges.
Billy Allen, an 11-year-old boy who did not know either Hasapis or the Centannis, stated that he saw the accident. Allen said that Hasapis did not have his headlight on and that the motorcycle crossed into Cen-tanni’s lane.
Had the evidence, been close, this matter would not be appropriate for appellate resolution. See Ragas and Fritscker, supra. The significant physical findings in the instant case and Allen’s objective testimony fully corroborate the Centannis’ accident version, indicating quite vividly from a reading of the record that Hasapis had not proven his allegations by the necessary preponderance.
We affirm the judgment of the district court dated February 9, 1984, which judgment (1) dismissed Hasapis’ claims and (2) awarded State Farm $5,507.30 it had paid to Centanni for damages to his Toyota automobile. Appellant is to pay all costs.
AFFIRMED.

. In accord with LSA-C.C.P. art. 1810.